JOSEPH H. HARRINGTON
United States Attorney
BRIAN M. DONOVAN
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>vs.<br><br>JOSE P. GOMEZ and MARIA GOMEZ,<br>Husband and Wife; COMMERCIAL<br>COLLECTION SERVICE, INC., nka<br>ARMADA CORPORATION; STATE<br>OF WASHINGTON DEPARTMENT OF<br>LABOR & INDUSTRIES,<br><br>                      Defendants. | No. 2:18-cv-00123<br><br>**COMPLAINT FOR<br>FORECLOSURE AND<br>DEFICIENCY JUDGMENT** |

The United States of America, on behalf of the Farm Service Agency ("FSA")

of the United States Department of Agriculture, alleges as follows:

1.      As this action is brought to collect an indebtedness owed to the United

States of America, jurisdiction exists pursuant to 28 U.S.C. § 1345.

2.      On or about March 17, 1994, Defendants Jose Gomez and Maria Gomez,

husband and wife, (Defendants Gomez) executed and delivered to FSA a promissory

note in the amount of $26,500.00.  A copy of this note is attached as Exhibit A.

3.      To secure the payment of the promissory note described in paragraph 2,

Defendants Gomez executed and delivered to FSA security agreements dated

February 3, 1994, and March 3, 1998, describing farm equipment and crops.  Copies

of these security agreements are attached as Exhibits B and C.  FSA's  security

COMPLAINT - 1

interests created by these security agreements were perfected by the filing of a UCC-1

financing statement on February 16, 1999, as Instrument No. 99-047-0379; a

continuation statement filed September 10, 2003, as Instrument No. 2003-254-6709-4;

a continuation statement filed October 14, 2008, as Instrument No. 2008-289-5084-0;

and a continuation statement filed December 5, 2013, as Instrument No. 2013-339-

6848-1,  in the Official Records of Department of Licensing for the State of

Washington.  Copies of the financing statement, continuation statements and

amendment statements are attached as Exhibits D, E, F, and G.

4.     Pursuant to the security agreements and financing statements described in

paragraph 3, FSA has a perfected security interest in the following described farm

equipment in the possession of Defendants Gomez and located in the State of

Washington:

1 Bin Fork, Rankin 1200#
1 Mower, Servis G60 S/N 7932
1 Tractor, John Deere 1140N, 1984 S/N 433285
1 Weed Sprayer, Pak Tank 100 Gallon S/N WS 104020
1 Sprayer, Turbo-mist 400 Gallon 1990 S/N 524p4098
1 Bin Lift, Cosmag/Sigma 2 Bin, 1994 S/N G734
1 Wind Machine, Orchard Rite, 1994
22 Aluminum Ladders 8' to 16'
1 Back Blade, Woods 6'
1 Mower, Woods D080 6', 1996 S/N 587088
1 Tractor, John Deere 2240 2WD
1 Post Hole Auger, Rankin 8" Auger
1 Plow, 1 Bottom
1 Bin Lift 3 Pt
1 Brush Rake 3 PT
1 Bin Trailer 4 Bin
1 Blade w/Lift, Front Mount

COMPLAINT - 2

Irrigation equipment including appurtenant buried mainline (permanently buried PVC pipe), portable mainline, and wheel lines.

5.    On or about June 29, 1995, Defendants Gomez executed and delivered to FSA a promissory note in the amount of $98,000.00.  A copy of this note is attached as Exhibit H.

6.    On or about June 29, 1995, to secure payment of the promissory note described in paragraph 5, Defendants Gomez executed and delivered to FSA a real estate mortgage describing certain real property Defendants Gomez own in Okanogan County, Washington.  A copy of this mortgage is attached as Exhibit I.  This mortgage was recorded July 13, 1995, in the Official Records of Okanogan County, Washington as Recording No. 830380, and re-recorded July 27, 1995, as Recording No. 831047, A copy of this mortgage is attached as Exhibit J.  This mortgage still exists of record as a lien on the real property.

7.    On or about June 4, 1997, Defendants Gomez executed and delivered to FSA a promissory note in the amount of $47,550.00.  A copy of this note is attached as Exhibit K.

8.    On or about June 4, 1997, for the purpose of securing payment of the promissory note described in paragraph 7, Defendants Gomez executed and delivered to FSA a real estate mortgage describing certain real property Defendants Gomez own in Okanogan County, Washington.  A copy of this mortgage is attached as Exhibit L. This mortgage was recorded in the Official Records of Okanogan County,

COMPLAINT - 3

Washington, on June 5, 1997, as Recording No. 853478.  This mortgage still exists of record as a lien upon the real property.

9.    On or about March 3, 1998, Defendants Gomez executed and delivered to FSA a promissory note in the amount of $42,350.00.  A copy of this note is attached as Exhibit M.

10.    On or about March 3, 1998, for the purpose of securing payment of the promissory note described in paragraph 9, Defendants Gomez executed and delivered to FSA a real estate mortgage describing certain real property they own in Okanogan County, Washington.  A copy of this mortgage is attached as Exhibit N.  This mortgage was recorded in the Official Records of Okanogan County, Washington, March 4, 1998, as Recording No. 862864.  This mortgage still exists of record as a lien upon the real property.

11.    Defendants Gomez are delinquent in the payment of their debt to FSA. In accordance with the provisions of the promissory notes, mortgages, and financing statements described in paragraphs 2 through 10, and after taking all actions required under applicable regulations, FSA declared the indebtedness to be immediately due and payable by letter sent January 20, 2017, by certified and regular mail.  A copy of the notice of acceleration is attached as Exhibit O.

12.    There is now owing from Defendants Gomez the sum of $153,605.60, consisting of $114,699.24 principal and $38,906.36 interest accrued through April 10,

COMPLAINT - 4

2018.  Interest continues to accrue on the unpaid principal at the daily rate of $25.1396.

13.    Defendant Commercial Collection Service, Inc. *now known as* Armada Corporation, claims an interest in the real property located in Okanogan County, Washington, owned by Defendants Gomez by reason of Judgment No. 00-9-0050-4 in the amount of $5,088.01, entered in the Superior Court for Okanogan County, Washington, Case No. 00-2-00564-6, on December 4, 2000.  The Judgment Transcript was filed as Auditor's file number 3029200, in the Official Records of Okanagan County, Washington, on December 4, 2000.

14.    Defendant State of Washington Department of Labor & Industries claims an interest in the real property located in Okanogan County, Washington owned by Defendants Gomez by reason of Judgment No. 13-9-00318-7 in the amount of $14,087.01 in Superior Court for Okanogan County, Case No. 13-2-00317-3, and Judgment No. 16-9-00067-1 in Superior Court for Okanogan County, Case No. 16-2-00049-7 in the amount of $799.29.

15.    The interests of all Defendants are inferior to the interest of the Plaintiff.

WHEREFORE, Plaintiff FSA requests judgment against Defendants as follows:

1.    Against Defendants Jose P. Gomez and Maria Gomez, husband and wife, jointly and severally, and the community composed of them, in the amount of $153,605.60 ($114,699.24 principal and $38,906.36 interest accrued through April 10, 2018); plus interest to accrue at the rate of $25.1396 per day from and after April 10,

COMPLAINT - 5

2018, to the date of judgment; plus interest from the date of judgment at the legal rate until paid in full, for costs of suit, including the filing fee allowed pursuant to 28 USC § 2412(a)(2), any costs of enforcing the judgment, any costs incurred by FSA to bid at any foreclosure sale, including but not limited to costs of title work and appraisals, and any other proper relief.

2.     Adjudging and decreeing said amount to be a prior lien upon the real property described in the mortgages, and the farm equipment, and appurtenant irrigation equipment described in the security agreements.  FSA requests an order foreclosing its interests created in the mortgages and security agreements executed by Defendants Gomez and delivered to Plaintiff, describing the real property and farm equipment and appurtenant irrigation equipment owned by Defendants Gomez, and located in Okanogan County, Washington.

3.     Directing that the mortgages and security agreements be foreclosed and the real property and appurtenant irrigation equipment, and farm equipment, described in those security instruments, be sold by the United States Marshal for the Eastern District of Washington in the manner provided by law; that the parties hereto be allowed to bid at the foreclosure sale of real property and appurtenant irrigation equipment; that the purchaser at said sale shall be issued a Certificate of Sale of Real Property and be immediately let into possession of said real property and appurtenant irrigation equipment; and that at the termination of the redemption period the Marshal

COMPLAINT - 6

issue his Deed; and after the foreclosure sale of the farm equipment the Marshall shall

issue a Bill of Sale.

4.      Directing that the proceeds realized from the sale of the real property and

appurtenant irrigation equipment, and farm equipment be applied as follows:  First, in

payment of attorneys' fees, costs, and expenses of this suit and foreclosing Plaintiff's

interests; and second in payment of Plaintiff's judgment.

5.      Directing that if any deficiency remains after application of the proceeds

of such sale, that execution may be issued for such deficiency against the Defendants

Gomez, husband and wife, both individually and the community composed of them,

and enforced against any other property subject to execution.

6.      Decreeing that the Defendants and all persons claiming by or through

them, be forever barred and foreclosed from asserting any title or interest in and to the

real property and appurtenant irrigation equipment, and farm equipment owned by

Defendants Gomez, except the right of redemption as provided by applicable law.

7.      Such other and further relief as the court may deem just and proper.

RESPECTFULLY SUBMITTED:   April 11, 2018.


                                        JOSEPH H. HARRINGTON
                                        United States Attorney


                                        s/Brian M. Donovan
                                        BRIAN M. DONOVAN
                                        Assistant United States Attorney
                                        Attorneys for Defendant United States

COMPLAINT - 7

# EXHIBIT A

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

| KIND OF LOAN | |
| --- | --- |
| Type: ___OL___ | ☒ Regular |
| | ☐ Limited Resource |

**PROMISSORY NOTE**

Pursuant to:
☒ Consolidated Farm & Rural Development Act
☐ Emergency Agricultural Credit Adjustment Act of 1978

| Name |
| --- |
| JOSE P. GOMEZ and MARIA GOMEZ |

| **ACTION REQUIRING NOTE** | |
| --- | --- |
| ☐ Initial loan | ☐ Rescheduling |
| ☒ Subsequent loan | ☐ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| | ☐ Deferred payments |
| ☐ Consolidation | ☐ Debt write down |
| ☐ Conservation easement | |

| State | County |
| --- | --- |
| WASHINGTON | OKANOGAN |

| Case No. | Date |
| --- | --- |
| 56-024---------- | March 17, 1994 |

| Fund Code | Loan No. |
| --- | --- |
| 44 | 02 |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in ____OKANOGAN, WASHINGTON____

_____, or at such other place as the Government may later designate in writing, the principal sum of

TWENTY SIX THOUSAND FIVE HUNDRED------------------------------------------------------- dollars

($ 26,500.00------------------------------), plus interest on the unpaid principal balance at the **RATE** of

FIVE AND ONE QUARTER_____ percent (___5.25____ %) per annum and

_____dollars ($ _____ )
of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in ____8____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| $ 4,622.00 | on 1-1-95 | ; $ | NA | on |
| --- | --- | --- | --- | --- |
| $ NA | on | ; $ | NA | on |
| $ NA | on | ; $ | NA | on |
| $ NA | on | ; $ | NA | on |
| $ NA | on | ; $ | NA | on |
| $ NA | on | ; $ | NA | on |

and $ 4,622.00 _____ thereafter on ___1-1___ of each ___year___ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ___7___ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

ENTERED 3-21-94        -5924
PROCESSED 5624        3-22-94
OPERATOR mago

9

U.S. G.P.O.:1992-654-050/40511                    *Position 2*                    FmHA 1940-17 (Rev. 4-92)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

REFINANCING (GRADUATION) AGREEMENT: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

JOSE P. GOMEZ _(Borrower)_

MARIA GOMEZ

P. O. BOX 917

Tonasket, WA 98855

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $26,500.00 | 3-14-94 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $        . | |

*U.S. G.P.O.: 1992 - 854-050/40511          *Position 2*          FmHA 1940-17 (Rev. 4-92)

# EXHIBIT B

USDA-FmHA
Form FmHA 440-4
(Rev. 2/88)

Position 1

# SECURITY AGREEMENT
## (CHATTELS AND CROPS)

I.   THIS SECURITY AGREEMENT, dated _____ February 3 _____, 19 94, is made between the United States of America

acting through the Farmers Home Administration (called Secured Party) and _____ Jose P. Gómez _____

and _____ Maria Gomez _____ (called Debtor), whose mailing address is

P.O. Box 917      Tonasket, WA 98855

II.   BECAUSE Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are called "note", which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The note evidences a loan to Debtor, and Secured Party at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act or any other act administered by the Farmers Home Administration and

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced by the note, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor; and

NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made or insured by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other act administered by the Farmers Home Administration and with interest, (b) at all times when the note is held by an insured holder, to secure performance of Debtor's agreement in this instrument to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and the performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:

DEBTOR GRANTS to Secured Party a security interest in Debtor's interest in the following collateral, including the proceeds and products thereof after this collateral:

*Item 1.*   All crops, annual and perennial, and other plant products now planted, growing or grown, or which are planted after this instrument is signed or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is prescribed by State law, on the following described real estate:

| Farm(s) or Other Real Estate *Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
|---|---|---|---|
| Portion of S. 22, Twp. 38N, Rge. 27, E.W.M.  A portion of S. 23, Twp. Twp. 38N, Rge. 27, E.W.M. | 11.71 | Okanogan, WA | 6 Mi. N. of Tonasket |
| Portion of S.21, 22, 27 and 28, Twp. 38 N. Rge. 27, E.W.M. | 3 | Okanogan, WA | 5 Mi. N. of Tonasket |

Including all peanut and tobacco poundage allotments existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the debtors to any subsequent party.

*Owner shown in related Financing Statement, except if informed of ownership change show reputed new owner.

13

*Item 2.* All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following:

| Line No. | Quantity | Kind | Manufacturer | Size and Type | Condition | Year of manufacture | Serial or Motor No. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Any fixture described above is affixed or is to be affixed to the real estate described in *Item 1* of this instrument.

*Item 3.* All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:

| Line No. | Quantity | Kind-sex | Breed | Color | Weight, average weight | Age or age Range | Brands or other identification |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

F.    Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

G.    All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

H.    In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require.

IV.    IT IS FURTHER AGREED THAT:

A.    Until default Debtor may retain possession of the collateral.

B.    Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this instrument or to observe or perform any covenants or agreements in this instrument or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of anyone of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon any such default.

1.    Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or pre-serving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law.

2.    Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

3.    A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this instrument.

C.    Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to or insured by Secured Party, and sixth to Debtor. Any proceeds collected under insur-ance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replace-ment of the collateral, third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

D.    It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.

E.    This instrument is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this instrument.

F.    If any provision of this instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instru-ment shall be construed as if it had never contained such invalid or unenforceable provision.

G.    The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.

H.    If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any in-debtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

I.    Secured Party shall have the sole and exclusive rights as the secured party under this instrument, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this instrument or any benefits of it.

J.    SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREE-MENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

K.    Failure by the Secured Party to exercise any right—whether once or often—shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.


_____ (SEAL)          _____ (SEAL)
JOSE P. GOMEZ              *(Debtor)*          MARIA GOMEZ              *(Debtor)*

☆ U.S. GOVERNMENT PRINTING OFFICE: 1989-454-052/80002



*Item 4.*   All accounts, contract rights and general intangibles, as follows: All accounts, general intangibles, gross receipts, including co-op retains, equities and revolving funds derived from or related to debtor's farmland or farming operation.

III.   DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A.   Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

and Debtor will defend the collateral against the claims and demands of all other persons. Reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B.   Statements contained in Debtor's loan application(s) are true and correct; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, and (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this instrument.

C.   Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of liens searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees and other charges now or later required by regulations of the Farmers Home Administration. At all times when the note is held by an insured holder, Debtor shall continue to make payments on the note to Secured Party, as collection agent for the holder.

D.   If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

E.   At all times when the note is held by an insured holder, any amount due and unpaid under the terms of the note to which the holder is entitled may be paid by Secured Party to the holder of the note for the account of Debtor. Any amount due and unpaid under the terms of the note, whether it is held by Secured Party or by an insured holder, may be credited by Secured Party on the note and thereupon shall constitute an advance by Secured Party for the account of Debtor. Any advance by Secured Party as described in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the date of payment to Secured Party, provided that Borrower shall be required to pay interest on only the principal portion of such advance unless otherwise provided in the regulations of the Farmers Home Administration.

16

(1-item list attached)  Cosmos            PDM 6,753.

We acknowledge that the above Machinery and Equipment list is an attachment to the 2-3-94 Security Agreement.

_____            2/3/94
JOSE P. GOMEZ                               DATE

_____            2/3/94
MARIA GOMEZ                                 DATE

17

# EXHIBIT C

USDA-FmHA
Form FmHA 440-4
(Rev. 2/88)

SECURITY AGREEMENT
(CHATTELS AND CROPS)

    I.   THIS SECURITY AGREEMENT, dated  March     03, 1998, is made between the United States

of America acting through the Farmers Home Administration (called Secured Party) and

  JOSE GOMEZ                                     and  MARIA GOMEZ

(called Debtor), whose mailing address is

  POB 917  TONASKET, WA 98855-

    II.  BECAUSE Debtor is justly indebted to Secured Party as evidenced by one or more certain
promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to
Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s),
all of which are called "note", which has been executed by Debtor, is payable to the order of Secured
Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any
default by Debtor; and

    The note evidences a loan to Debtor, and Secured Party at any time, may assign the note and
insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development
Act or any other act administered by the Farmers Home Administration and

    It is the purpose and intent of this instrument that, among other things, at all times when
the note is held by Secured Party, or in the event Secured Party should assign this instrument without
insurance of the note, this instrument shall secure payment of the note; but when the note is held
by an insured holder, this instrument shall not secure payment of the note or attach to the debt
evidenced by the note, but as to the note and such debt shall constitute an indemnity security
agreement to secure Secured Party against loss under its insurance contract by reason of any
default by Debtor; and

    NOW THEREFORE, in consideration of said loan(s) and (a) at all times when the note is held
by Secured Party, or in the event Secured Party should assign this instrument without insurance
of the payment of the note, to secure the prompt payment of all existing and future indebtedness
and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness
and any additional loans or future advances to Debtor before or after made or insured by Secured
Party under the then existing provisions of the Consolidated Farm and Rural Development Act or
any other act administered by the Farmers Home Administration all with interest, (b) at all
times when the note is held by an insured holder, to secure performance of Debtor's agreement
in this instrument to indemnify and save harmless Secured Party against loss under its insurance
contract by reason of any default by Debtor, (c) in any event and at all times to secure the
prompt payment of all advances and expenditures made by Secured Party, with interest, as described
in this instrument, and the performance of every covenant and agreement of Debtor contained in this
instrument or in any supplementary agreement:

   ..-DEBTOR GRANTS to Secured Party a security interest in Debtor's interest in the following
collateral, including the proceeds and products thereof after this collateral:

FmHA 440-4 (Rev. 2/88)

Item 1. All crops, annual and perennial, and other plant products now planted, growing or grown, or which are planted after this instrument is signed or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is prescribed by State law, on the following described real estate:

| Farm(s) or Other Real Estate *Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
| --- | --- | --- | --- |
| NE 1/4 OF S 22, T 38 N, R 27.-ASCS #1084 | 20 | OKANOGAN, WA | |
| -ASCS #1691 | 1 | OKANOGAN, WA | 7 miles N of Tonasket on H Hwy 7 |

Including all peanut and tobacco poundage allotments existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds dervied from the conveyance or lease and transfer by the debtors to any subsequent party.

*Owner shown in related Financing Statement, except if informed of ownership change show reputed new owner.

Item 2.   All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following:

| Line No. | Quantity | Kind | Manufacturer | Size and Type | Condition | Year of manufac- ture | Serial or Motor No. |
|------|------|------|------|------|------|------|------|
| 001 | 1 | BIN FORK | RANKIN | 1200# | Good | | |
| 002 | 1 | MOWER | UNKNOWN | 5 FT,PTO | Fair | | |
| 003 | 1 | PICK-UP, DIESEL | CHEV | 1/2T, 2WHL | Fair | 1974 | VINCCZ148J153756 |
| 004 | 1 | TRACTOR - DIESEL | JOHN DEERE | 1140N | Good | 1984 | 433285 |
| 005 | 1 | TRAILER | HOMEMADE - SGL AXLE | 6' X 20' | Poor | | |
| 006 | 1 | WEED SPRAYER | Turbo Mist | 200 gl | Good | | WS 104020 |
| 007 | 1 | SPRAYER | Turbo-mist | 400 gl | Good | 1990 | 524p4098 |
| 008 | 1 | BIN LIFT | Cosmag/Sigma | 2 bin | Good | 1994 | G734 |
| 010 | 1 | WIND MACHINE | Orchard Rite | | Good | 1994 | |
| 011 | 9 | ALUMINUM LADDERS | | 10',12' | Good | 1993 | |
| 012 | 1 | BACK BLADE | Woods | 6' | Good | | |
| 013 | 1 | MOWER | WOODS D080 | 6' | Good | 1996 | 587088 |

Any fixture described above is affixed or is to be affixed to the real estate described in Item 1 of this instrument.

21

Item 3.    All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:

| Line No. | Quantity | Kind-Sex | Breed | Color | Weight, average weight | Age or age Range | Brands or other identification |
|------|----------|----------|-------|-------|----------------|---------|--------------------|

Item 4.   All accounts, contract rights and general intangibles, as follows:

All accounts, general intangibles, gross receipts, including co-op retains equities and revolving funds derived from or related to debtor's farmland or farming operation.

### III.  DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A.  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

and Debtor will defend the collateral against the claims and demands of all other persons.  Reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B.  Statements contained in Debtor's loan application(s) are true and correct; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, and (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this instrument.

C.  Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of liens searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for intruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees and other charges now or later required by regulations of the Farmers Home Administration.  At all times when the note is held by an insured holder, Debtor shall continue to make payments on the note to Secured Party, as collection agent for the holder.

D.  If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

E.  At all times when the note is held by an insured holder, any amount due and unpaid under the terms of the note to which the holder is entitled may be paid by Secured Party to the holder of the note for the account of Debtor.  Any amount due and unpaid under the terms of the note, whether it is held by Secured Party or by an insured holder, may be credited by Secured Party on the note and thereupon shall constitute an advance by Secured Party for the account of Debtor.  Any advance by Secured Party as described in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the date of payment to Secured Party, provided that Borrower shall be required to pay interest on only the principal portion of such advance unless otherwise provided in the regulations of the Farmers Home Administration.

F.  Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor.  All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

G.  All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument.  No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay.  Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

H.  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require.

23

IV.  IT IS FURTHER AGREED THAT:
    A.    Until default Debtor may retain possession of the collateral.
    B.    Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured  by this instrument or to observe or perform any covenants or agreements in this instrument or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of anyone of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  Upon any such default.
    1.    Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law.

    2.    Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.
    3.    A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property.  Likewise, default under such other security instrument shall constitute default under this instrument.
    C.    Proceeds from disposition of collateral may be applied first on expenses of retaking, holding, preparing for sale, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farmers Home Administration, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to or insured by Secured Party, and sixth to Debtor.  Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies.  Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.
    D.    It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.
    E.    This instrument is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this instrument.
    F.    If any provision of this instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instrument shall be construed as if it had never contained such invalid or unenforceable provision.
    G.    The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns.  All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.
    H.    If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.
    I.    Secured Party shall have the sole and exclusive rights as the secured party under this instrument, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this instrument or any benefits of it.
    J.    SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.
    K.    Failure by the Secured Party to exercise any right-whether once or often--shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition.  Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.


_____ (SEAL)     _____ (SEAL)
JOSE GOMEZ            (Debtor)              MARIA GOMEZ           (Debtor)


U.S. GOVERNMENT PRINTING OFFICE:1988-554-052/80002

24

# EXHIBIT D

This UCC-1 FINANCING STATEMENT is presented for filing pursuant to the WASHINGTON UNIFORM COMMERCIAL CODE, chapter 62A.9 RCW, to perfect a security interest in the below named collateral. **PLEASE TYPE FORM** Filing fee:$12.00

| 1. DEBTOR(S) (see instruction #2) Debtor 1 | 2. FOR OFFICE USE ONLY - DO NOT WRITE IN THIS BOX |
|---|---|

☒ PERSONAL (last, first, middle name and address) SSN: 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
☐ BUSINESS (legal business name and address) FEIN: _____

Debtor 2
SSN: 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
FEIN: _____

GOMEZ, Jose P.
GOMEZ, Maria
PO Box 917
Tonasket, WA 98855

TRADE NAME, DBA, AKA:

FILED 8:00 AM

'99 FEB 16

99-047-0379

DEPT. OF
OLYMPIA

3. SECURED PARTY(IES) (name and address)

UNITED STATES OF AMERICA acting though
UNITED STATES DEPARTMENT OF AGRICULTURE
1251 S 2ND ROOM 103
OKANOGAN WA 98840

4. ASSIGNEE(S) of SECURED PARTY(IES) if
applicable (name and address)

5. SECURED PARTY CONTACT PERSON: STUART C. SKIDMORE          PHONE: (509) 422-2767

6. CHECK ONLY IF APPLICABLE: (For definitions of TRANSMITTING UTILITY AND PRODUCTS OF COLLATERAL, see instruction sheet.)
☐ Debtor is a Transmitting Utility          ☐ Products of Collateral are also covered

7. THIS FINANCING STATEMENT covers the following collateral: (Attach additional 8-1/2" x 11" sheet(s) if needed.)

Crops, livestock, supplies, other farm products, and farm and other equipment.
All accounts, general intangibles, gross receipts, including co-op retains, equities
and revolving funds derived from or related to debtor's farmland or farming activities.

8. RETURN ACKNOWLEDGE COPY TO: (name and address)

9. FILE WITH:

UNIFORM COMMERCIAL CODE
DEPARTMENT OF LICENSING
P.O. BOX 9660
OLYMPIA, WA 98507-9660
(206) 753-2523

MAKE CHECKS PAYABLE TO THE
DEPARTMENT OF LICENSING

10. FOR OFFICE USE ONLY   IMAGES TO
BE FILMED

11. If collateral is described below, this statement may be signed by the Secured Party instead of the Debtor. Please check the appropriate box, complete the adjacent lines and box 13, if collateral is:

a. ☐ already subject to a security interest in another jurisdiction when it was brought into this state or when the debtor's location was changed to this state. (complete adjacent lines 1 and 2)

b. ☐ proceeds of the original collateral described above in which a security interest was perfected. (complete adjacent lines 1 and 2)

c. ☒ listed on a filing which has lapsed. (complete adjacent lines 1 and 2)

d. ☐ acquired after a change of name, identity, of corporate structure of the debtor(s). (complete adjacent lines 1, 2 and 3)

1. 94-038-1087
ORIGINAL FILING NUMBER

2. **DEPARTMENT OF LICENSING**
FILING OFFICE WHERE FILED

3. _____
FORMER NAME OF DEBTOR(S)

12. DEBTOR(S) NAME(S) AND SIGNATURE(S):

TYPE NAME(S) OF DEBTOR(S) AS IT APPEARS IN BOX 1.

SIGNATURE(S) OF DEBTORS

SIGNATURE(S) OF DEBTORS

13. SECURED PARTY NAME(S) AND SIGNATURE(S) ARE REQUIRED IF BOX 11 HAS BEEN COMPLETED
UNITED STATES OF AMERICA acting though
UNITED STATES DEPARTMENT OF AGRICULTURE
TYPE NAME(S) OF SECURED PARTY(IES) as it appears in box 3 or 4

SIGNATURE(S) OF SECURED PARTY(IES)

SIGNATURE(S) OF SECURED PARTY(IES)

FORM APPROVED FOR USE IN THE STATE OF WASHINGTON (R/7/93)
WASHINGTON UCC-1

COPY 1 - FILING OFFICE

# EXHIBIT E

Attachment 1 to Filing Number 2003-254-8700-6

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

STUART C. SKIDMORE                    (509) 422-3292

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

USDA - FARM SERVICE AGENCY

1251 S 2ND ROOM 103

OKANOGAN                    WA    98840

**1 0 3 2 4 9 3**

091003    13.28

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 99-047-0379        2-16-1999 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | GOMEZ | JOSE & MARIA | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. TAX ID #: SSN OR EIN | ADDL INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only **one** box.

Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

"CROPS, LIVESTOCK, SUPPLIES, FARM PRODUCTS, AND FARM AND OTHER EQUIPMENT. ALL ACCOUNTS, GENERAL INTANGIBLES, INCLUDING, BUT NOT LIMITED TO, ALL DEBTOR'S RIGHTS DERIVED FROM DEBTOR'S PARTICIPATION IN AN AGRICULTURE COOPERATIVE (SUCH AS CO-OP RETAINS, EQUITIES AND REVOLVING FUNDS) AND ALL DEBTOR'S RIGHTS TO PAYMENTS DERIVED FROM PRESENT OR FUTURE GOVERNMENT FARM PROGRAMS, CONTRACTS, OR SUBSIDIES."
S22, 23-T38N-R27 EWM.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA

JOSE & MARIA GOMEZ

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98) WASHINGTON FILLABLE (REV. 09/13/2001)

# EXHIBIT F

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
STUART C. SKIDMORE                    (509) 422-3292

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

USDA FARM SERVICE AGENCY

1251 S 2ND ROOM 103

OKANOGAN                    WA      98840

Revenue Tracking Number
1 2 0 2 7 0 4

101408    115.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
99-047-0379    2-16-1999

1b. This FINANCING STATEMENT AMENDMENT is
☐ to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new
name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name
to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also
item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME

OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
---|---|---|---|---
| GOMEZ | JOSE & MARIA | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
---|---|---|---|---
| | | |

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY
---|---|---|---|---

7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any
---|---|---|---|---
| | | | ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

"CROPS, LIVESTOCK, SUPPLIES, FARM PRODUCTS, AND OTHER EQUIPMENT. ALL ACCOUNTS, GENERAL INTANGIBLES, INCLUDING, BUT NOT LIMITED TO, ALL DEBTOR'S RIGHTS DERIVED FROM DEBTOR'S PARTICIPATION IN AN AGRICULTURE COOPERATIVE (SUCH AS CO-OP RETAINS, EQUITIES AND REVOLVING FUNDS) AND ALL DEBTOR'S RIGHTS TO PAYMENTS DERIVED FROM PRESENT OR FUTURE GOVERNMENT FARM PROGRAMS, CONTRACTS, OR SUBSIDIES."

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME

OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
---|---|---|---|---
| | | |

10. OPTIONAL FILER REFERENCE DATA
JOSE & MARIA GOMEZ

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)WASHINGTON FILLABLE (REV. 09/13/2001)

# EXHIBIT G

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
| --- | --- |
| Sandra Hinger 5094223292 | |

**B. E-MAIL CONTACT AT FILER** (optional)
sandy.hinger@wa.usda.gov

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Sandra Hinger 5094223292
Farm Service Agency
1251 S 2nd Ave Suite 103
Okanogan   WA 98840 9723

Date of Filing : 12/05/2013
Time of Filing : 01:03:00 PM
File Number    : 2013-339-6848-1
Lapse Date     : 02/16/2019

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
99-047-0379

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in Item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c  ☐ ADD name: Complete item 7a or 7b, and item 7c  ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | USDA FARM SERVICE AGENCY | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)
International Association of Commercial Administrators (IACA)

PAGE 1 OF 1

2013-339-6848-1

# EXHIBIT H

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

| KIND OF LOAN | |
|---|---|
| Type: __FP__ | ☐ Regular |
| | ☐ Limited Resource |

## PROMISSORY NOTE

Pursuant to:
☐ Consolidated Farm & Rural Development Act
☐ Emergency Agricultural Credit Adjustment Act of 1978

| Name | | ACTION REQUIRING NOTE | |
|---|---|---|---|
| JOSE P. GOMEZ and MARIA GOMEZ | | ☐ Initial loan | ☐ Rescheduling |
| **State** WASHINGTON | **County** OKANOGAN | ☐ Subsequent loan | ☐ Reamortization |
| **Case No.** 56-24—.................... | **Date** 6/29/95 | ☐ Consolidated & subsequent loan | ☐ Credit sale ☐ Deferred payments |
| **Fund Code** 41 | **Loan No.** 03 | ☐ Consolidation ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in _____OKANOGAN, WASHINGTON_____

_____, or at such other place as the Government may later designate in writing, the principal sum of

_____NINETY-EIGHT THOUSAND DOLLARS AND NO/100-------------------------------------dollars

($___98,000.00____), plus interest on the unpaid principal balance at the **RATE** of

_____EIGHT_____ percent (___8.0___%) per annum and

_____dollars ($_____)
of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration. not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in _____41_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$___8,220.00_____ on __11/01/96__ ; $_____ on _____;
$_____ on _____ ; $_____ on _____;
$_____ on _____ ; $_____ on _____;
$_____ on _____ ; $_____ on _____;
$_____ on _____ ; $_____ on _____;
$_____ on _____ ; $_____ on _____;
and $___8,220.00_____ thereafter on ___FIRST___ of each __NOVEMBER__ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _____40_____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

**34**

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

REFINANCING (GRADUATION) AGREEMENT: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

35

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_____ (Borrower)
JOSE P. GOMEZ

(SEAL)

_____ (Borrower)
MARIA GOMEZ

"The term Farmers Home Administration (FmHA) includes the successor agencies thereto."

P.O. BOX 917

TONASKET, WA 98855

_____

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

**36**

# EXHIBIT I

USDA-FmHA 0005
Form FmHA 1927-1 WA
(Rev. 3-94)
Ans d

BAINES TITLE CO., INC.
P.O. BOX 628
OKANOGAN, WA 98840
E-33759

VOL 134 PAGE 1574

BAINES TITLE CO., INC.
FILED FOR RECORD

95 JUL 13 AM 10: 47

REEL 134 PAGE 1574
OKANOGAN COUNTY AUDITOR
OKANOGAN, WA

## REAL ESTATE MORTGAGE FOR WASHINGTON

THIS MORTGAGE is made and entered into by _____

_____ JOSE P. GOMEZ and MARIA GOMEZ, HUSBAND AND WIFE _____

residing in __OKANOGAN_____ County, Washington, whose post office address is

_____ P.O. BOX 917 _____ TONASKET _____ , Washington, __98855___ ,
herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," or any shared appreciation agreement or recapture agreement, which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 6- 29 -1995 | 98,000.00 | 8.0% | 06-01-2036 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage, and assign with general warranty unto the Government the following property situated in the State of Washington,

County(ies) of ___OKANOGAN_____ :

830380

FmHA 1927-1 WA (Rev. 3-94)

830380

VOL **134** PAGE **1575**

SEE ATTATCHED EHIBIT "A" FOR LEGAL DESCRIPTION AND EXCEPTIONS TO TITLE.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to irrigation equipment, milking equipment, grain bins, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of the Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

39

**830380**

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (b) prescribing any other statute of limitations, (c) allowing any right of redemption or possession following any foreclosure sale or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to future regulations of the United States Department of Agriculture not inconsistent with the express provisions of this mortgage.

**830380**

830380

VOL 134 PAGE 1577

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Wenatchee, Washington 98801, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

WITNESS the hand(s) of Borrower this ____29th____ day of ____JUNE____ , 19 95 .

"The term Farmers Home
Administration (FmHA) includes the
successor agencies thereto."

JOSE P. GOMEZ

MARIA GOMEZ

STATE OF WASHINGTON

COUNTY OF ____OKANOGAN____ } ss:    **ACKNOWLEDGMENT**

On this day personally appeared before me the within-named ____JOSE P. GOMEZ and MARIA GOMEZ____

____ , to me known to be the individual(s) described in and who executed the within and foregoing instrument and acknowledged that ____they____ signed the same ____their____ free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ____29th____ day of ____JUNE____ , 19 95 .

(NOTARIAL SEAL)

Vivian C. Burse
Notary Public in and for the State of Washington,

Residing at ____TONASKET____

830380

830380

VOL **134** PAGE **1578**

EXHIBIT "A"

Beginning at the center of the Northeast quarter of Section 22, Township 38 North, Range 27, E.W.M., thence run South 680.0 feet, thence run West to the State Highway right of way, as located in 1951, thence Northeasterly along said highway right of way to the intersection with the North line of the Southwest quarter of the Northeast quarter of said Section 22, thence run East along said North line to the point of beginning.  LESS the highway right of way.

The East 1000.0 feet of the North 495.0 feet of the Southeast quarter of the Northeast quarter of Section 22, and the North 825.0 feet of Government Lot 2 of Section 23, all in Township 38 North, Range 27, E.W.M.

The South half of the Northeast quarter of the Northeast quarter of Section 22, and that portion of Government Lot 1, Section 23, lying East of the said South half of the Northeast quarter of the Northeast quarter of Section 22.  All in Township 38 North, Range 27, E.W.M., LESS the highway right of way.

The West 320.0 feet of the North 495.0 feet of the Southeast quarter of the Northeast quarter of Section 22, Township 38 North, Range 27, E.W.M.

ALL IN OKANOGAN COUNTY, WASHINGTON.

EXCEPT from the above described the following tract:

A portion of the Northeast quarter of Section 22, and a portion of Government Lots 1 and 2 of Section 23, all in Township 38 North, Range 27, E.W.M., described as follows:

Commencing at the Northwest corner of the said Northeast quarter, a 2" aluminum cap monument, from which the Northwest corner of said Section 22, bears S. 89 deg. 54' 56" W., 2644.75 feet;  Thence N. 89 deg. 59' 09" E., along the North line of said Northeast quarter for a distance of 2644.88 feet to the Northeast corner of said Northeast quarter of Section 22.  Thence S. 00 deg. 04' 00" W., along the East line of said Northeast quarter for a distance of 660.0 feet to the Northeast corner of the South half of the Northeast quarter of the Northeast quarter of said Section 22, and the TRUE POINT OF BEGINNING.

Thence run S. 89 deg. 58' 46' W., along the North line of said South half of Northeast quarter of the Northeast quarter, for a distance of 607.63 feet to an extension of an existing fenceline.

Thence S. 02 deg. 01' 14" E., for a distance of 813.21 feet;
Thence S. 49 deg. 26' 50" E., for a distance of 281.16 feet;
Thence S. 89 deg. 09' 23" E., for a distance of 452.26 feet;
Thence S. 11 deg. 04' 46" W., for a distance of 171.23 feet;
Thence S. 14 deg. 31' 13" W., for a distance of 221.69 feet to the West line of the said Government Lot 2, thence leaving said fenceline S. 00 deg. 04' 00" W., along said West line for a distance of 99.97 feet to the Southwest corner of the North 825.0 feet of said Government Lot 2 of Section 23.  Thence S. 90 deg.

830380

830380

VOL 134 PAGE 1579

EXHIBIT "A" — CONTINUED

00' 00" E., along the South line of said North 825.0 feet for a distance of 325.18 feet, more or less to the ordinary high water line on the right bank of the Okanogan River. Thence continue along said ordinary high water line along the following course:

N. 05 deg. 51' 22" W., for a distance of 146.81 feet;
N. 05 deg. 08' 05" W., for a distance of 186.05 feet;
N. 04 deg. 17' 33" W., for a distance of 198.71 feet;
N. 04 deg. 51' 00" W., for a distance of 202.05 feet;
N. 04 deg. 57' 01" W., for a distance of 110.73 feet;
N. 13 deg. 33' 48" E., for a distance of 134.79 feet;
N. 07 deg. 12' 51" W., for a distance of 196.79 feet;
N. 06 deg. 36' 23" W., for a distance of 196.33 feet;
N. 05 deg. 03' 56" W., for a distance of 123.06 feet, more or less to the North line of the South half of said Government Lot 1; Thence leaving said ordinary high water line, N 90 deg. 00' 00" W., along said North line for a distance of 223.76 feet, more or less, to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING an easement for ingress and egress, being a 30.0 foot wide strip of land, lying 30.0 feet North of and adjacent to the following described line: Commencing at the Northeast corner of said Northeast quarter of Section 22; Thence S. 00 deg. 04' 00" W., for a distance of 1815.00 feet, thence N. 89 deg. 58' 22" E., for a distance of 58.34 feet to existing fenceline, and the TRUE POINT OF BEGINNING. Thence S. 89 deg. 58' 22" W., for a distance of 1531.38 feet, more or less, to the Southeasterly right of way line of Okanogan County Road No. 9437, and the TERMINUS of this line.

"SUBJECT TO ALL VALID OUTSTANDING EASEMENTS, RIGHTS-OR-WAY, MINERAL LEASES, MINERAL RESERVATIONS, AND MINERAL CONVEYANCES OF RECORD".

"AND THE FOLLOWING DESCRIBED IRRIGATION SYSTEMS INCLUDING BUT NOT LIMITED TO THE FOLLOWING, INCLUDING ANY REPLACEMENT OF OR ADDITIONS TO SUCH SYSTEMS-- COMPLETE SPRINKLER SYSTEMS W/PUMPS, MAINS, SUB-MAINS, RISERS, SPRINKLERS, PLUGS, VALVES AND FITTINGS".

SEE NEXT PAGE FOR ADDITIONAL EXCEPTIONS TO TITLE.

830380

EXHIBIT "A" - CONTINUED        830380

VOL **134** PAGE **1580**

SUBJECT TO THE FOLLOWING:

1.  LIABILITY FOR FUTURE ASSESSMENTS OR CHARGES BY THE OROVILLE-TONASKET IRRIGATION DISTRICT.

2.  RESERVATION CONTAINED IN DEED TO ROY VISSER AND WIFE, FOR THE EAST 1000 FEET OF THE NORTH 495 FEET OF THE SENE OF SECTION 22, AND THE NORTH 825 FEET OF LOT 2 OF SECTION 23, BY RICHARD JOHNSON AND WIFE, WHEREIN GRANTOR RESERVE THE RIGHT TO WATER FOR DOMESTIC PURPOSES FROM A WELL LOCATED APPROXIMATELY 6 FEET INSIDE THE NORTH LINE OF SAID TRACT, AND RIGHT OF WAY FOR PIPE LINE FROM SAID WELL AND FOR POWER LINE TO SAID WELL, AS RECORDED IN VOLUME 129 PAGE 75.

3.  STATUTORY RESERVATIONS CONTAINED IN THE DEED FROM THE STATE OF WASHINGTON THROUGH WHICH TITLE TO THE SWNE OF SECTION 22, IS CLAIMED WHEREIN GRANTOR RESERVES ALL OILS, GASES, COAL, ORES, MINERALS AND FOSSILS, TOGETHER WITH RIGHT TO ENTER UPON SAID LANDS FOR THE PURPOSE OF MINING SAME, UPON PAYING TO THE OWNER OF SAID LANDS FULL PAYMENT FOR ALL DAMAGES SUSTAINED BY REASON OF SUCH ENTERING.

4.  RIGHT OF WAY EASEMENT IN FAVOR OF THE PUBLIC UTILITY DISTRICT NO. 1 OVER THE NESWNE OF SECTION 22, AS GRANTED BY INSTRUMENT RECORDED IN BOOK 107 OF DEEDS, PAGE 119.

5.  CONFIRMATION AND INDENTURE DEED DATED 2/20/1982 IN FAVOR OF THE UNITED STATES OF AMERICA FOR RESERVED RIGHTS OF WAY FOR WATER PIPE LINES AND CONDUITS AS RECORDED IN REEL 40 PAGE 587, UNDER FILE NO. 687275.

6. ACCESS EASEMENT 30 FEET WIDE AS SHOWN ON SURVEY RECORDED IN BOOK J OF SURVEYS, PAGE 110, FILE NO. 799062.

830380

# EXHIBIT J

P.O. BOX 628
OKANOGAN, WA 98840

135 F 0153

831  17233959

# REAL ESTATE MORTGAGE FOR WASHINGTON

B...NES TITLE CO., INC.
FILED FOR RECORD

95 JUL 27 PM 2: 08

REEL 135 PAGE 153
OKANOGAN COUNTY AUDITOR
OKANOGAN, WA

THIS MORTGAGE is made and entered into by _____

JOSE P. GOMEZ and MARIA GOMEZ, Husband and Wife

residing in  OKANOGAN _____ County, Washington, whose post office address is

___ P.O. BOX 917 ___ Tonasket _____ , Washington, 98855 ,

herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," or any shared appreciation agreement or recapture agreement, which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 6-29-1995 | 98,000.00 | 6.5% | 11-01-2036 |

Indexed
Direct
Reverse
Recorded
Paged

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage, and assign with general warranty unto the Government the following property situated in the State of Washington,

County(ies) of  OKANOGAN _____ :

831047

FmHA 1927-1 WA (Rev. 3-94)

46

031047

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION AND EXCEPTIONS TO TITLE.

VOL 135 PAGE 0154

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to irrigation equipment, milking equipment, grain bins, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of the Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

831047

135 PAGE 0158

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (b) prescribing any other statute of limitations, (c) allowing any right of redemption or possession following any foreclosure sale or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to future regulations of the United States Department of Agriculture not inconsistent with the express provisions of this mortgage.

831047

**831047**    VOL **135** PAGE **0159**

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Wenatchee, Washington 98801, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

WITNESS the hand(s) of Borrower this _____29th_____ day of ____JUNE_____ , 19 _95_ .

"The term Farmers Home Administration
(FmHA) includes the successor agencies
thereto."

_JOSE P. GOMEZ_
JOSE P. GOMEZ

_Maria Gomez_
MARIA GOMEZ

STATE OF WASHINGTON

COUNTY OF ____OKANOGAN_____ } *ss.*    **ACKNOWLEDGMENT**

On this day personally appeared before me the within-named ___JOSE P. GOMEZ AND MARIA GOMEZ___

_____ , to me known to be the individual(s) described in and who executed the within and foregoing instrument and acknowledged that _____they_____ signed the same _____their_____ free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___29th_____ day of ____JUNE_____ , 19 _95_ .

(NOTARIAL SEAL)

_Vivian C Burse_    **VIVIAN C. BURSE**
Notary Public in and for the State of Washington,

Residing at _Tonasket_

**831047**

EXHIBIT "A" - CONTINUED         831047         VOL 135 PAGE 0156

00' 00" E., along the South line of said North 825.0 feet for a
distance of 325.18 feet, more or less to the ordinary high water
line on the right bank of the Okanogan River.   Thence continue
along said ordinary high water line along the following course:
  N. 05 deg. 51' 22" W., for a distance of 146.81 feet;
  N. 05 deg. 08' 05" W., for a distance of 186.05 feet;
  N. 04 deg. 17' 33" W., for a distance of 198.71 feet;
  N. 04 deg. 51' 00" W., for a distance of 202.05 feet;
  N. 04 deg. 57' 01" W., for a distance of 110.73 feet;
  N. 13 deg. 33' 48" E., for a distance of 134.79 feet;
  N. 07 deg. 12' 51" W., for a distance of 196.79 feet;
  N. 06 deg. 36' 23" W., for a distance of 196.33 feet;
  N. 05 deg. 03' 56" W., for a distance of 123.06 feet, more or
less to the North line of the South half of said Government Lot 1;
Thence leaving said ordinary high water line, N 90 deg. 00' 00" W.,
along said North line for a distance of 223.76 feet, more or less,
to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING an easement for ingress and egress, being a 30.0
foot wide strip of land, lying 30.0 feet North of and adjacent to
the following described line:  Commencing at the Northeast corner
of said Northeast quarter of Section 22;  Thence S. 00 deg. 04' 00"
W., for a distance of 1815.00 feet, thence N. 89 deg. 58' 22" E.,
for a distance of 58.34 feet to existing fenceline, and the TRUE
POINT OF BEGINNING.   Thence S. 89 deg. 58' 22" W., for a distance
of 1531.38 feet, more or less, to the Southeasterly right of way
line of Okanogan County Road No. 9437, and the TERMINUS of this
line.

"SUBJECT TO ALL VALID OUTSTANDING EASEMENTS, RIGHTS-OR-WAY, MINERAL LEASES,
MINERAL RESERVATIONS, AND MINERAL CONVEYANCES OF RECORD".

"AND THE FOLLOWING DESCRIBED IRRIGATION SYSTEMS INCLUDING BUT NOT LIMITED TO THE
FOLLOWING, INCLUDING ANY REPLACEMENT OF OR ADDITIONS TO SUCH SYSTEMS-- COMPLETE
SPRINKLER SYSTEMS W/PUMPS, MAINS, SUB-MAINS, RISERS, SPRINKLERS, PLUGS, VALVES AND
FITTINGS".

SEE NEXT PAGE FOR ADDITIONAL EXCEPTIONS TO TITLE.

831047

EXHIBIT "A" - CONTINUED

831047

VOL 135 PAGE 0157

SUBJECT TO THE FOLLOWING:

1. LIABILITY FOR FUTURE ASSESSMENTS OR CHARGES BY THE OROVILLE-TONASKET IRRIGATION DISTRICT.

2. RESERVATION CONTAINED IN DEED TO ROY VISSER AND WIFE, FOR THE EAST 1000 FEET OF THE NORTH 495 FEET OF THE SENE OF SECTION 22, AND THE NORTH 825 FEET OF LOT 2 OF SECTION 23, BY RICHARD JOHNSON AND WIFE, WHEREIN GRANTOR RESERVE THE RIGHT TO WATER FOR DOMESTIC PURPOSES FROM A WELL LOCATED APPROXIMATELY 6 FEET INSIDE THE NORTH LINE OF SAID TRACT, AND RIGHT OF WAY FOR PIPE LINE FROM SAID WELL AND FOR POWER LINE TO SAID WELL, AS RECORDED IN VOLUME 129 PAGE 75.

3. STATUTORY RESERVATIONS CONTAINED IN THE DEED FROM THE STATE OF WASHINGTON THROUGH WHICH TITLE TO THE SWNE OF SECTION 22, IS CLAIMED WHEREIN GRANTOR RESERVES ALL OILS, GASES, COAL, ORES, MINERALS AND FOSSILS, TOGETHER WITH RIGHT TO ENTER UPON SAID LANDS FOR THE PURPOSE OF MINING SAME, UPON PAYING TO THE OWNER OF SAID LANDS FULL PAYMENT FOR ALL DAMAGES SUSTAINED BY REASON OF SUCH ENTERING.

4. RIGHT OF WAY EASEMENT IN FAVOR OF THE PUBLIC UTILITY DISTRICT NO. 1 OVER THE NESWNE OF SECTION 22, AS GRANTED BY INSTRUMENT RECORDED IN BOOK 107 OF DEEDS, PAGE 119.

5. CONFIRMATION AND INDENTURE DEED DATED 2/20/1982 IN FAVOR OF THE UNITED STATES OF AMERICA FOR RESERVED RIGHTS OF WAY FOR WATER PIPE LINES AND CONDUITS AS RECORDED IN REEL 40 PAGE 587, UNDER FILE NO. 687275.

6. ACCESS EASEMENT 30 FEET WIDE AS SHOWN ON SURVEY RECORDED IN BOOK J OF SURVEYS, PAGE 110, FILE NO. 799062.

831047

# EXHIBIT K

Form FmHA 1940-17 Page 1 of 3

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

| KIND OF LOAN | | |
|---|---|---|
| Type **OL** | ☒ | Regular |
| | ☐ | Limited Resource |

| | Pursuant to: |
|---|---|
| ☐ | Consolidated Farm & Rural Development Act |
| ☐ | Emergency Agricultural Credit Adjustment Act of 1978 |

## PROMISSORY NOTE

Name
**JOSE P. GOMEZ & MARIA GOMEZ**

| ACTION REQUIRING NOTE | | | |
|---|---|---|---|
| ☐ | Initial loan | ☐ | Rescheduling |
| ☒ | Subsequent loan | ☐ | Reamortization |
| ☐ | Consolidated & | ☐ | Credit sale |
| | Subsequent loan | ☐ | Deferred payments |
| ☐ | Consolidation | ☐ | Debt write down |
| ☐ | Conservation easement | | |

| State | County |
|---|---|
| **WASHINGTON** | **OKANOGAN** |

| Case No. | Date |
|---|---|
| **56-024----------------** | **JUNE 4, 1997** |

| Fund Code | Loan No. |
|---|---|
| **44** | **06** |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in **1251 S. 2ND ROOM 103, OKANOGAN, WA  98840**, or at such other place as the Government may later designate in writing, the principal sum of **FORTY SEVEN THOUSAND FIVE HUNDRED FIFTY AND NO/100** dollars (**$47,550.00**), plus interest on the unpaid principal balance at the RATE of **SIX AND ONE HALF** percent (**6.5%**) per annum and **ZERO** dollars (**$0.00**) of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Adminis-tration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Bor-rower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in **THREE** installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| $1,398.00 | on 01-01-98 | ;$ 50,641.00 | on 01-01-99; |
|---|---|---|---|
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |

and **$0.00**        thereafter on **N/A** of each **N/A**    until the
principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable **TWO** years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*U.S. G.P.O.: 1992 - 654-050/40511                Position 2                FmHA 1940-17 (Rev. 4-92)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new term):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

Form FmHA 1940-17 Page 3 of 3

HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT: Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an ;agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to pro- duce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in com- pliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

DEFAULT: Failure to pay when due any debt evidenced by this note or perform any covenant or agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

**"The term Farmers Home Administration (FmHA) includes the successor agencies thereto."**_____

Presentment, protest, and notice are waived.

(SEAL)

**JOSE P. GOMEZ**                                  **MARIA GOMEZ**          (Borrower)


PO BOX 917

TONASKET, WA  98855


### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $14,740.00 | 06-04-97 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

55

# EXHIBIT L

**FARM SERVICE AGENCY**

VOL **155** PAGE **1989**

USDA-FmHA
Form FmHA 1927-1 WA
(Rev. 9-19-96)

*Position 5 - Real Estate Security*

**PAGE 1 OF 4**

## REAL ESTATE MORTGAGE FOR WASHINGTON

THIS MORTGAGE is made and entered into by JOSE P. GOMEZ AND MARIA GOMEZ residing in OKANOGAN County, Washington, whose post office address is PO BOX 917 TONASKET, Washington, 98855, herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," or any shared appreciation agreement or recapture agreement, which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| JUNE 4, 1997 | $47550.00 | 06.500 % | JUNE 4, 1999 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage, and assign with general warranty unto the Government the following property situated in the State of Washington, County(ies) of OKANOGAN:

Assessor's Tax Parcel #
Additional Parcel Numbers page #
Abbreviated Legal Description
Additional Legal See Exhibit "A" page #5

USDA-FmHA
Form FmHA 1927-1 WA
(Rev. 9-19-96)

*Position 5 - Real Estate Security*

PAGE 2 OF 4

VOL 155 PAGE 1991

## REAL ESTATE MORTGAGE FOR WASHINGTON

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to irrigation equipment, milking equipment, grain bins, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of the Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the

VOL 155 PAGE 1990

*Position 5 - Real Estate Security*

# REAL ESTATE MORTGAGE FOR WASHINGTON

Government-whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of, (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower.  At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (b) prescribing any other statute of limitations, (c) allowing any right of redemption or possession following any foreclosure sale or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower.  Borrower expressly waives the benefit of any such State laws.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to future regulations of the United States Department of Agriculture not inconsistent with the express provisions of this mortgage.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Wenatchee, Washington 98801, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

VOL 155 PAGE 1992

USDA-FmHA
Form FmHA 1927-1 WA
(Rev. 9-19-96)

*Position 5 - Real Estate Security*

PAGE 4 OF 4

## REAL ESTATE MORTGAGE FOR WASHINGTON

**"The term Farmers Home Administration (FmHA) includes the successor agencies thereto."** _____

WITNESS the hand(s) of Borrower this <u>4TH</u> day of <u>JUNE</u>, <u>1997</u>.

<u>JOSE P. GOMEZ</u>

<u>MARIA GOMEZ</u>

STATE OF <u>WASHINGTON</u>
                ss:           ACKNOWLEDGMENT
COUNTY OF <u>OKANOGAN</u>

On this day personally appeared before me with the within-named <u>JOSE P. GOMEZ AND MARIA GOMEZ</u> , to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that <u>THEY</u> signed the same <u>THEIR</u> free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this <u>4TH</u> day of <u>JUNE</u>, <u>1997</u>.

[SEAL]

SANDRA K. HINGER
Notary Public in and for the State of Washington

Residing at <u>OKANOGAN</u>.
MY COMMISSION EXPIRES 6-29-2000

60

VOL **155** PAGE **1993**

## EXHIBIT "A"

Beginning at the center of the Northeast quarter of Section 22, Township 38 North, Range 27, E.W.M., thence run South 680.0 feet, thence run West to the State Highway right of way, as located in 1951, thence Northeasterly along said highway right of way to the intersection with the North line of the Southwest quarter of the Northeast quarter of said Section 22, thence run East along said North line to the point of beginning.    LESS the highway right of way.

The East 1000.0 feet of the North 495.0 feet of the Southeast quarter of the Northeast quarter of Section 22, and the North 825.0 feet of Government Lot 2 of Section 23, all in Township 38 North, Range 27, E.W.M.

The South half of the Northeast quarter of the Northeast quarter of Section 22, and that portion of Government Lot 1, Section 23, lying East of the said South half of the Northeast quarter of the Northeast quarter of Section 22.  All in Township 38 North, Range 27, E.W.M., LESS the highway right of way.

The West 320.0 feet of the North 495.0 feet of the Southeast quarter of the Northeast quarter of Section 22, Township 38 North, Range 27, E.W.M.

ALL IN OKANOGAN COUNTY, WASHINGTON.

EXCEPT from the above described the following tract:

A portion of the Northeast quarter of Section 22, and a portion of Government Lots 1 and 2 of Section 23, all in Township 38 North, Range 27, E.W.M., described as follows:

Commencing at the Northwest corner of the said Northeast quarter, a 2" aluminum cap monument, from which the Northwest corner of said Section 22, bears S. 89 deg. 54' 56" W., 2644.75 feet;  Thence N. 89 deg. 59' 09" E., along the North line of said Northeast quarter for a distance of 2644.88 feet to the Northeast corner of said Northeast quarter of Section 22.  Thence S. 00 deg. 04' 00" W., along the East line of said Northeast quarter for a distance of 660.0 feet to the Northeast corner of the South half of the Northeast quarter of the Northeast quarter of said Section 22, and the TRUE POINT OF BEGINNING.

Thence run S. 89 deg. 58' 46' W., along the North line of said South half of Northeast quarter of the Northeast quarter, for a distance of 607.63 feet to an extension of an existing fenceline.

Thence S. 02 deg. 01' 14" E., for a distance of 813.21 feet;
Thence S. 49 deg. 26' 50" E., for a distance of 281.16 feet;
Thence S. 89 deg. 09' 23" E., for a distance of 452.26 feet;
Thence S. 11 deg. 04' 46" W., for a distance of 171.23 feet;
Thence S. 14 deg. 31' 13" W., for a distance of 221.69 feet to the West line of the said Government Lot 2, thence leaving said fenceline S. 00 deg. 04' 00" W., along said West line for a distance of 99.97 feet to the Southwest corner of the North 825.0 feet of said Government Lot 2 of Section 23.  Thence S. 90 deg.

VOL 155 PAGE 1994

EXHIBIT "A" — CONTINUED

00' 00" E., along the South line of said North 825.0 feet for a distance of 325.18 feet, more or less to the ordinary high water line on the right bank of the Okanogan River.   Thence continue along said ordinary high water line along the following course:
    N. 05 deg. 51' 22" W., for a distance of 146.81 feet;
    N. 05 deg. 08' 05" W., for a distance of 186.05 feet;
    N. 04 deg. 17' 33" W., for a distance of 198.71 feet;
    N. 04 deg. 51' 00" W., for a distance of 202.05 feet;
    N. 04 deg. 57' 01" W., for a distance of 110.73 feet;
    N. 13 deg. 33' 48" E., for a distance of 134.79 feet;
    N. 07 deg. 12' 51" W., for a distance of 196.79 feet;
    N. 06 deg. 36' 23" W., for a distance of 196.33 feet;
    N. 05 deg. 03' 56" W., for a distance of 123.06 feet, more or less to the North line of the South half of said Government Lot 1; Thence leaving said ordinary high water line, N 90 deg. 00' 00" W., along said North line for a distance of 223.76 feet, more or less, to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING an easement for ingress and egress, being a 30.0 foot wide strip of land, lying 30.0 feet North of and adjacent to the following described line:  Commencing at the Northeast corner of said Northeast quarter of Section 22;  Thence S. 00 deg. 04' 00" W., for a distance of 1815.00 feet, thence N. 89 deg. 58' 22" E., for a distance of 58.34 feet to existing fenceline, and the TRUE POINT OF BEGINNING.   Thence S. 89 deg. 58' 22" W., for a distance of 1531.38 feet, more or less, to the Southeasterly right of way line of Okanogan County Road No. 9437, and the TERMINUS of this line.

"SUBJECT TO ALL VALID OUTSTANDING EASEMENTS, RIGHTS-OR-WAY, MINERAL LEASES, MINERAL RESERVATIONS, AND MINERAL CONVEYANCES OF RECORD".

"AND THE FOLLOWING DESCRIBED IRRIGATION SYSTEMS INCLUDING BUT NOT LIMITED TO THE FOLLOWING, INCLUDING ANY REPLACEMENT OF OR ADDITIONS TO SUCH SYSTEMS-- COMPLETE SPRINKLER SYSTEMS W/PUMPS, MAINS, SUB-MAINS, RISERS, SPRINKLERS, PLUGS, VALVES AND FITTINGS".

SEE NEXT PAGE FOR ADDITIONAL EXCEPTIONS TO TITLE.

853478

EXHIBIT "A" - CONTINUED

VOL 155 PAGE 1995

SUBJECT TO THE FOLLOWING:

1.   LIABILITY FOR FUTURE ASSESSMENTS OR CHARGES BY THE OROVILLE-TONASKET
IRRIGATION DISTRICT.

2.   RESERVATION CONTAINED IN DEED TO ROY VISSER AND WIFE, FOR THE EAST 1000 FEET
OF THE NORTH 495 FEET OF THE SENE OF SECTION 22, AND THE NORTH 825 FEET OF LOT 2
OF SECTION 23, BY RICHARD JOHNSON AND WIFE, WHEREIN GRANTOR RESERVE THE RIGHT TO
WATER FOR DOMESTIC PURPOSES FROM A WELL LOCATED APPROXIMATELY 6 FEET INSIDE THE
NORTH LINE OF SAID TRACT, AND RIGHT OF WAY FOR PIPE LINE FROM SAID WELL AND FOR
POWER LINE TO SAID WELL, AS RECORDED IN VOLUME 129 PAGE 75.

3.   STATUTORY RESERVATIONS CONTAINED IN THE DEED FROM THE STATE OF WASHINGTON
THROUGH WHICH TITLE TO THE SWNE OF SECTION 22, IS CLAIMED WHEREIN GRANTOR RESERVES
ALL OILS, GASES, COAL, ORES, MINERALS AND FOSSILS, TOGETHER WITH RIGHT TO ENTER
UPON SAID LANDS FOR THE PURPOSE OF MINING SAME, UPON PAYING TO THE OWNER OF SAID
LANDS FULL PAYMENT FOR ALL DAMAGES SUSTAINED BY REASON OF SUCH ENTERING.

4.   RIGHT OF WAY EASEMENT IN FAVOR OF THE PUBLIC UTILITY DISTRICT NO. 1 OVER THE
NESWNE OF SECTION 22, AS GRANTED BY INSTRUMENT RECORDED IN BOOK 107 OF DEEDS, PAGE
119.

5.   CONFIRMATION AND INDENTURE DEED DATED 2/20/1982 IN FAVOR OF THE UNITED STATES
OF AMERICA FOR RESERVED RIGHTS OF WAY FOR WATER PIPE LINES AND CONDUITS AS
RECORDED IN REEL 40 PAGE 587, UNDER FILE NO.  687275.

6. ACCESS EASEMENT 30 FEET WIDE AS SHOWN ON SURVEY RECORDED IN BOOK J OF SURVEYS,
PAGE 110, FILE NO.  799062.

# EXHIBIT M

Form FmHA 1940-17 Page 1 of 3

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

| KIND OF LOAN | | |
|---|---|---|
| Type **OL** | ☒ | Regular |
| | ☐ | Limited Resource |

## PROMISSORY NOTE

| Name **GOMEZ, JOSE AND MARIA** | Pursuant to: |
|---|---|
| | ☒ Consolidated Farm & Rural Development Act |
| | ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| State **WASHINGTON** | County **OKANOGAN** | ACTION REQUIRING NOTE | |
|---|---|---|---|
| | | ☐ Initial loan | ☐ Rescheduling |
| Case No. **56-024---------------** | Date **MARCH 3, 1998** | ☒ Subsequent loan | ☐ Reamortization |
| | | ☐ Consolidated & | ☐ Credit sale |
| Fund Code **44** | Loan No. **07** | ☐ Subsequent loan Consolidation | ☐ Deferred payments |
| | | ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in **OKANOGAN, WA**, or at such other place as the Government may later designate in writing, the principal sum of **FORTY TWO THOUSAND THREE HUNDRED FIFTY** dollars (**$42,350.00**), plus interest on the unpaid principal balance at the RATE of **SIX** percent (**6.0**%) per annum and **ZERO** dollars (**$0.00**)

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Adminis-tration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Bor-rower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in **THREE** installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| $1,800.00 | on 1/1/99 | ;$ 44,448.00 | on 1/1/00; |
|---|---|---|---|
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |
| $N/A | on N/A | ;$ N/A | on N/A; |

and **$0** thereafter on **0** of each **0** until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable **TWO** years from the date of this note; and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*U.S. G.P.O.: 1992 - 654-050:40511          *Position 2*          FmHA 1940-17 (Rev. 4-92)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new term):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |
|  | $ | % | , 19 |  | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

REFINANCING (GRADUATION) AGREEMENT: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

Form FmHA 1940-17  Page 3 of 3

HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT: Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

DEFAULT: Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

**"The term Farmers Home Administration (FmHA) includes the successor agencies thereto."**_____

Presentment, protest, and notice are waived.

(SEAL) _JOSÉ GOMEZ_       _Maria (Gomez 3/3/98_

**JOSÉ GOMEZ**           **MARIA GOMEZ**     *(Borrower)*

---
---
---

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $3820.00 | 3/3/98 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

67

# EXHIBIT N

**FARM SERVICE AGENCY**
1251 S 2nd Ave., Room 103
Okanogan, WA 98840

**862864**

FSA
FILED FOR RECORD

98 MAR -4 PM 2:06
REEL VOL **165** PAGE **1635**
OKANOGAN COUNTY AUDITOR
OKANOGAN, WA

RECEIVED

MAR 1 3 1998

OKANOGAN COUNTY
FSA OFFICE

**USDA-FmHA**          *Position 5 - Real Estate Security*          **PAGE 1 OF 4**
Form FmHA 1927-1 WA
(Rev. 9-19-96)

## REAL ESTATE MORTGAGE FOR WASHINGTON

THIS MORTGAGE is made and entered into by <u>JOSE AND MARIA GOMEZ</u>  residing in <u>OKANOGAN</u> County, Washington, whose post office address is <u>PO Box 917, Tonasket</u>, Washington,<u>98855</u>, herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the  Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," or any shared appreciation agreement or recapture agreement, which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| MARCH 3, 1998 | 42,350.00 | 6.0% | 3/3/00 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage, and assign with general warranty unto the Government the following property situated in the State of Washington, County(ies) of <u>OKANOGAN</u>:

**Assessor's Tax Parcel #3827220062, 3827220063, 3827220064 AND 3827230040**
**Additional Parcel Numbers page #**
**Abbreviated Legal Description**
**Additional Legal See Exhibit "A"  page #1**

69

**USDA-FmHA**
Form FmHA 1927-1 WA
(Rev. 9-19-96)

*Position 5 - Real Estate Security*

# REAL ESTATE MORTGAGE FOR WASHINGTON

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to irrigation equipment, milking equipment, grain bins, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of the Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the

VOL **165** PAGE **1637**

USDA-FmHA
Form FmHA 1927-1 WA
(Rev. 9-19-96)

*Position 5 - Real Estate Security*

PAGE 3 OF 4

## REAL ESTATE MORTGAGE FOR WASHINGTON

Government-whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of, (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (b) prescribing any other statute of limitations, (c) allowing any right of redemption or possession following any foreclosure sale or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to future regulations of the United States Department of Agriculture not inconsistent with the express provisions of this mortgage.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Wenatchee, Washington 98801, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

VOL **165** PAGE **1638**

USDA-FmHA
Form FmHA 1927-1 WA
(Rev. 9-19-96)

*Position 5 - Real Estate Security*

**PAGE 4 OF 4**

## REAL ESTATE MORTGAGE FOR WASHINGTON

**"The term Farmers Home Administration (FmHA) includes the successor agencies thereto."_____**

WITNESS the hand(s) of Borrower this <u>THIRD</u> day of <u>MARCH</u>, <u>1998</u>

JOSE GOMEZ

MARIA GOMEZ

STATE OF <u>WASHINGTON</u>                    ss:                    ACKNOWLEDGMENT

COUNTY OF <u>OKANOGAN</u>

On this day personally appeared before me with the within-named <u>JOSE AND MARIA GOMEZ</u> , to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that <u>THEY</u> signed the same <u>THEIR</u> free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this <u>THIRD</u> day of <u>MARCH</u>, <u>1998</u>.

[SEAL]

SANDRA K. HINGER
Notary Public in and for the State of Washington

Residing at <u>OKANOGAN.</u>

MY COMMISSION EXPIRES 6-29-2000

72

# PAGE #1

VOL **165** PAGE **1639**

## LEGAL DESCRIPTION

Beginning at the center of the Northeast quarter of Section 22, Township 38 North, Range 27, E.W.M., thence run South 680.0 feet, thence run West to the State Highway right of way, as located in 1951, thence Northeasterly along said highway right of way to the intersection with the North line of the Southwest quarter of the Northeast quarter of said Section 22, thence run East along said North line to the point of beginning. LESS the highway right of way.

The East 1000.0 feet of the North 495.0 feet of the Southeast quarter of the Northeast quarter of Section 22, and the North 825.0 feet of Government Lot 2 of Section 23, all in Township 38 North, Range 27, E.W.M.

The South half of the Northeast quarter of the Northeast quarter of Section 22, and that portion of Government Lot 1, Section 23, lying East of the said South half of the Northeast quarter of the Northeast quarter of Section 22. All in Township 38 North, Range 27, E.W.M., LESS the highway right of way.

The West 320.0 feet of the North 495.0 feet of the Southeast quarter of the Northeast quarter of Section 22, Township 38 North, Range 27, E.W.M.

ALL IN OKANOGAN COUNTY, WASHINGTON.

EXCEPT from the above described the following tract:

A portion of the Northeast quarter of Section 22, and a portion of Government Lots 1 and 2 of Section 23, all in Township 38 North, Range 27, E.W.M., described as follows:

Commencing at the Northwest corner of the said Northeast quarter, a 2" aluminum cap monument, from which the Northwest corner of said Section 22, bears S. 89 deg. 54' 56" W., 2644.75 feet; Thence N. 89 deg. 59' 09" E., along the North line of said Northeast quarter for a distance of 2644.88 feet to the Northeast corner of said Northeast quarter of Section 22. Thence S. 00 deg. 04' 00" W., along the East line of said Northeast quarter for a distance of 660.0 feet to the Northeast corner of the South half of the Northeast quarter of the Northeast quarter of said Section 22, and the TRUE POINT OF BEGINNING.

Thence run S. 89 deg. 58' 46' W., along the North line of said South half of Northeast quarter of the Northeast quarter, for a distance of 607.63 feet to an extension of an existing fenceline.
Thence S. 02 deg. 01' 14" E., for a distance of 813.21 feet;
Thence S. 49 deg. 26' 50" E., for a distance of 281.16 feet;
Thence S. 89 deg. 09' 23" E., for a distance of 452.26 feet;
Thence S. 11 deg. 04' 46" W., for a distance of 171.23 feet;
Thence S. 14 deg. 31' 13" W., for a distance of 221.69 feet to the West line of the said Government Lot 2, thence leaving said fenceline S. 00 deg. 04' 00" W., along said West line for a distance of 99.97 feet to the Southwest corner of the North 825.0 feet of said Government Lot 2 of Section 23. Thence S. 90 deg.

73

VOL **165** PAGE **1640**

EXHIBIT "A" — CONTINUED

00' 00" E., along the South line of said North 825.0 feet for a distance of 325.18 feet, more or less to the ordinary high water line on the right bank of the Okanogan River.    Thence continue along said ordinary high water line along the following course:
N. 05 deg. 51' 22" W., for a distance of 146.81 feet;
N. 05 deg. 08' 05" W., for a distance of 186.05 feet;
N. 04 deg. 17' 33" W., for a distance of 198.71 feet;
N. 04 deg. 51' 00" W., for a distance of 202.05 feet;
N. 04 deg. 57' 01" W., for a distance of 110.73 feet;
N. 13 deg. 33' 48" E., for a distance of 134.79 feet;
N. 07 deg. 12' 51" W., for a distance of 196.79 feet;
N. 06 deg. 36' 23" W., for a distance of 196.33 feet;
N. 05 deg. 03' 56" W., for a distance of 123.06 feet, more or less to the North line of the South half of said Government Lot 1; Thence leaving said ordinary high water line, N 90 deg. 00' 00" W., along said North line for a distance of 223.76 feet, more or less, to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING an easement for ingress and egress, being a 30.0 foot wide strip of land, lying 30.0 feet North of and adjacent to the following described line:  Commencing at the Northeast corner of said Northeast quarter of Section 22;  Thence S. 00 deg. 04' 00" W., for a distance of 1815.00 feet, thence N. 89 deg. 58' 22" E., for a distance of 58.34 feet to existing fenceline, and the TRUE POINT OF BEGINNING.  Thence S. 89 deg. 58' 22" W., for a distance of 1531.38 feet, more or less, to the Southeasterly right of way line of Okanogan County Road No. 9437, and the TERMINUS of this line.

"SUBJECT TO ALL VALID OUTSTANDING EASEMENTS, RIGHTS-OR-WAY, MINERAL LEASES, MINERAL RESERVATIONS, AND MINERAL CONVEYANCES OF RECORD".

"AND THE FOLLOWING DESCRIBED IRRIGATION SYSTEMS INCLUDING BUT NOT LIMITED TO THE FOLLOWING, INCLUDING ANY REPLACEMENT OF OR ADDITIONS TO SUCH SYSTEMS-- COMPLETE SPRINKLER SYSTEMS W/PUMPS, MAINS, SUB-MAINS, RISERS, SPRINKLERS, PLUGS, VALVES AND FITTINGS".

74

862864

VOL 165 PAGE 1641

SUBJECT TO THE FOLLOWING:

1. LIABILITY FOR FUTURE ASSESSMENTS OR CHARGES BY THE OROVILLE-TONASKET IRRIGATION DISTRICT.

2. RESERVATION CONTAINED IN DEED TO ROY VISSER AND WIFE, FOR THE EAST 1000 FEET OF THE NORTH 495 FEET OF THE SENE OF SECTION 22, AND THE NORTH 825 FEET OF LOT 2 OF SECTION 23, BY RICHARD JOHNSON AND WIFE, WHEREIN GRANTOR RESERVE THE RIGHT TO WATER FOR DOMESTIC PURPOSES FROM A WELL LOCATED APPROXIMATELY 6 FEET INSIDE THE NORTH LINE OF SAID TRACT, AND RIGHT OF WAY FOR PIPE LINE FROM SAID WELL AND FOR POWER LINE TO SAID WELL, AS RECORDED IN VOLUME 129 PAGE 75.

3. STATUTORY RESERVATIONS CONTAINED IN THE DEED FROM THE STATE OF WASHINGTON THROUGH WHICH TITLE TO THE SWNE OF SECTION 22, IS CLAIMED WHEREIN GRANTOR RESERVES ALL OILS, GASES, COAL, ORES, MINERALS AND FOSSILS, TOGETHER WITH RIGHT TO ENTER UPON SAID LANDS FOR THE PURPOSE OF MINING SAME, UPON PAYING TO THE OWNER OF SAID LANDS FULL PAYMENT FOR ALL DAMAGES SUSTAINED BY REASON OF SUCH ENTERING.

4. RIGHT OF WAY EASEMENT IN FAVOR OF THE PUBLIC UTILITY DISTRICT NO. 1 OVER THE NESWNE OF SECTION 22, AS GRANTED BY INSTRUMENT RECORDED IN BOOK 107 OF DEEDS, PAGE 119.

5. CONFIRMATION AND INDENTURE DEED DATED 2/20/1982 IN FAVOR OF THE UNITED STATES OF AMERICA FOR RESERVED RIGHTS OF WAY FOR WATER PIPE LINES AND CONDUITS AS RECORDED IN REEL 40 PAGE 587, UNDER FILE NO. 687275.

6. ACCESS EASEMENT 30 FEET WIDE AS SHOWN ON SURVEY RECORDED IN BOOK J OF SURVEYS, PAGE 110, FILE NO. 799062.

# EXHIBIT O



| USDA United States Department of Agriculture | Farm and Foreign Agricultural Services | Farm Service Agency | Washington State Farm Service Agency 316 W. Boone Ave. Suite 568 Spokane, WA 99201-2350 |

**5-FLP, Exhibit 49**

## NOTICE OF ACCELERATION OF FARM LOAN PROGRAMS ACCOUNTS SECURED BY REAL ESTATE AND/OR CHATTELS IN CASES NOT INVOLVING BANKRUPTCY

SENT VIA CERTIFIED AND REGULAR MAIL
RETURN RECEIPT REQUESTED
#7002 2030 0002 0620 6765

January 20, 2017

Jose P. Gomez
Maria Gomez
P.O. Box 917
Tonasket, WA 98855

Subject: **NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

Dear Jose & Maria:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption agreements which evidence the loans received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable. They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Ch. 12 Bankruptcy Plan | 08/25/2003 | $183,191.44 |
| Promissory Note | 03/17/1994 | $26,500.00 |
| Promissory Note | 06/29/1995 | $98,000.00 |
| Promissory Note | 06/04/1997 | 47,550.00 |
| Promissory Note | 03/03/1998 | $42,350.00 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| UCC-1 | 02/16/1999 | WA Dept. of Licensing | #99-047-0379 |
| Real Estate Mortgage | 06/29/1995 | Okanogan County Auditor | #830380 |
| Real Estate Mortgage | 06/29/1995 | Okanogan County Auditor | #831047 |
| Real Estate Mortgage | 06/04/1997 | Okanogan County Auditor | #853478 |
| Real Estate Mortgage | 03/03/1998 | Okanogan County Auditor | #862864 |

USDA is an equal opportunity provider, employer, and lender.

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reasons for taking this action are as follows:

Your two loans with the Farm Service Agency are both past due. Loan no. 44-08 is $15,044.02 behind, and loan no. 41-10 is $36,033.00 behind as of today's date.

The indebtedness due is $113,718.95 unpaid principal, and $28,358.15 unpaid interest, as of 01/20/2017, plus additional interest accruing at the rate of $24.9247 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.
If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 1251 S. 2nd Ave., Room 103, Okanogan, WA 98840. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

USDA is an equal opportunity provider, employer, and lender.

5-FLP, Exhibit 49

D)  VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government. Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

*UNITED STATES OF AMERICA*

*BY:*
STEVEN L. KING
District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquiries, please contact your local office.

Privacy Act – A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

USDA is an equal opportunity provider, employer, and lender.

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jose P. Gomez
Maria Gomez
P.O. Box 917
Tonasket, WA  98855

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _Maria Gee_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7002 2030 0002 0620 6765

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-154



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ 1.15 |
| Certified Fee | 3.45 |
| Return Reciept Fee (Endorsement Required) | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.40 |

Postmark Here  1/20/17

Sent To  Jose + Maria Gomez
Street, Apt. No.; or PO Box No.  P.O. Box 917
City, State, ZIP+4  Tonasket, WA  98855

7002 2030 0002 0620 6765

PS Form 3800, June 2002        See Reverse for Instructions

80

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| **(b)**  County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1   U.S. Government  Plaintiff | ❏ 3   Federal Question  *(U.S. Government Not a Party)* |
| ❏ 2   U.S. Government  Defendant | ❏ 4   Diversity  *(Indicate Citizenship of Parties in Item III)* |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place  of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place  of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a  Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure  of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury -  Product Liability | ❏ 690 Other | ❏ 423 Withdrawal  28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product  Liability | ❏ 367 Health Care/  Pharmaceutical  Personal Injury  Product Liability | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel &  Slander | | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment  & Enforcement of Judgment | ❏ 330 Federal Employers'  Liability | | | ❏ 820 Copyrights | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal  Injury Product  Liability | | ❏ 830 Patent | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted  Student Loans  (Excludes Veterans) | ❏ 345 Marine Product  Liability | | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and  Corrupt Organizations |
| | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment  of Veteran's Benefits | ❏ 355 Motor Vehicle  Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards  Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal  Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management  Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/  Exchange |
| ❏ 190 Other Contract | ❏ 362 Personal Injury -  Medical Malpractice | ❏ 380 Other Personal  Property Damage | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | | ❏ 385 Property Damage  Product Liability | ❏ 751 Family and Medical  Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement  Income Security Act | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information  Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff  or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party  26 USC 7609 | ❏ 899 Administrative Procedure  Act/Review or Appeal of  Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate  Sentence | | | |
| ❏ 240 Torts to Land | ❏ 443 Housing/  Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of  State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities -  Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities -  Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration  Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee -  Conditions of  Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ❏ 1  Original  Proceeding | ❏ 2  Removed from  State Court | ❏ 3  Remanded from  Appellate Court | ❏ 4  Reinstated or  Reopened | ❏ 5  Transferred from  Another District  *(specify)* | ❏ 6  Multidistrict  Litigation |

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: |
|---|---|
| | Brief description of cause: |

| VII.  REQUESTED IN  COMPLAINT: | ❏ CHECK IF THIS IS A **CLASS ACTION**  UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:  JURY DEMAND:    ❏ Yes   ❏ No |
|---|---|---|---|

| VIII.  RELATED CASE(S)  IF ANY | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| | |

**FOR OFFICE USE ONLY**

| RECEIPT # _____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ | MAG. JUDGE _____ |
|---|---|---|---|---|

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.